FILED

2016 Dec-22  AM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **BEN LITTLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:15-CV-954-VEH** |
| | ) |
| **CITY OF ANNISTON, GENE D.** | ) |
| **ROBINSON, and HERBERT N.** | ) |
| **PALMORE,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

This civil action was originally filed on May 5, 2015, in the Circuit Court of Calhoun County by the Plaintiff, Ben Little, against the following Defendants: the City of Anniston, Alabama ("the City"); Gene D. Robinson, in his official capacity as the mayor of Anniston, Alabama; and Herbert N. Palmore, in his official capacity as a member of the City Council of Anniston, Alabama.[1]  The Complaint sets out claims for "racial discrimination" under 42 U.S.C. §§ 1983 and 1988 (Count One),

---

[1]  How the individual defendants are sued (*i.e.* in their official or individual capacities) is confusingly stated in the caption of the Complaint which names Robinson "individually as former mayor [of the City  Anniston]," and Palmore "individually as former member of the Anniston City Council."  (Doc. 1-3 at 2).  The caption also includes the line "and their successors in office."  (Doc. 1-3 at 2).  Paragraph 3 of the body of the Complaint seems to resolve all doubt when it states that "Defendants are all sued in their official capacities."  (Doc. 1-3 at 3).  Thus, the Court treats the individual defendants as sued in their official capacities only.

and "breach of implied contract" under Alabama law (Count Two).  Both counts arise out of two lawsuits filed against the Plaintiff while he was a member of the Anniston City Council and the City's failure to pay the Plaintiff's attorney's fees incurred in defending those proceedings.

The case comes before the Court on the Defendants' motion for summary judgment (doc. 16), and motion to strike certain evidence proffered by the Plaintiff in opposition to the motion (doc. 19).  For the reasons stated herein, the motion to strike will be **GRANTED**, and the motion for summary judgment will be **GRANTED**.

## I.    THE DEFENDANTS' MOTION TO STRIKE (DOC. 19)

In the motion to strike the Defendants write:

In the Plaintiff's Response to Defendants' Motion for Summary Judgment, the Plaintiff relied upon six evidentiary submissions which were not previously produced or identified, each of which should have been responsive to Defendants' written discovery requests, as well as the disclosure requirements of Fed. R. Civ. P. 26:

> B.    Cleo Thomas Email 12/14/11 (D.18-2)
>
> F.    Don Hoyt Email 12/16/11 (D.18-6)
>
> J.    Ken Smith Email 12/9/11 (D.18-9)
>
> K.    Don Hoyt Email (D.18-10)
>
> N.    Raymond Johnson Letter to Joel Laird 9/17/14

2

(D.18-13)

    R.    Ben Little Claim for Attorney's Fees to Ken Smith
          1/2/14 (D.18-17)

(Doc. 19 at 3-4).  The Plaintiff does not dispute that these documents have always been under his care, custody, or control.  Accordingly, since these documents are being used by the Plaintiff to support his claims, they fall under Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, which requires the Plaintiff to produce:

> a copy--or a description by category and location--of all <u>documents</u>, electronically stored information, and tangible things <u>that the disclosing party</u> has in its possession, custody, or control and <u>may use to support its claims or defenses</u>, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(ii) (underlining added).  It is undisputed that the Plaintiff failed to produce <u>or even to identify</u> the requested documents as required by Rule 26(a)[2], and never filed a supplemental response identifying or producing those documents.

It is also undisputed that the above referenced documents were within the scope of materials sought by the Defendants in their requests for production.[3]  The Plaintiff

---

[2]  In his disclosures under Rule 26(a)(1)(A)(ii) the Plaintiff wrote <u>only</u> the name and address of his counsel and failed to describe <u>any</u> documents.  (Doc. 19-1 at 4).

[3]  The Defendants state that:

> During discovery in this matter, Defendants propounded discovery requests on Plaintiff, requesting, among other things:

does not dispute that he did not respond to those requests by producing or identifying the documents.[4] It is also undisputed that the documents were not produced or identified as a result of any supplemental production by the Plaintiff.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, <u>unless the failure was substantially justified or is</u>

---

· Please produce a copy of every document upon which you may rely or which you may offer into evidence at trial;

· Please produce a copy of each and every document or item in your, or your attorney's, possession or control which you believe supports or evidences your claims or allegations;

· Please produce a copy of each and every document or item in your, or your attorney's possession, or control which disproves or controverts any defenses of the Defendants;

· Please identify all correspondence, electronic mail, documents, notes, and/or memorandums, whether in either written form or electronic data, between you and the named Defendants regarding the facts made the basis of your complaint. Please produce a copy of each correspondence as part of your response to this interrogatory.

(Doc. 19 at 2-3; *see also*, doc. 19-2 at 5, ¶15; at 6, ¶¶2, 4; at 7 ¶5).

[4] To each request the Plaintiff responded only with "Plaintiff will respond to this request based on the Court's pre-trial order."  (Doc. 19-2 at 5, ¶15; at 6, ¶¶2, 4; at 7 ¶5).

harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).[5] "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (emphasis added, internal citations omitted).[6]

Although a number of courts have articulated a standard for determining whether a failure to disclose was "substantially justified," the Eleventh Circuit has not. However, many district courts within this circuit have adopted the approach that a failure to disclose is "substantially justified" when there is a "justification to a degree that could satisfy a reasonable person that parties could differ as to whether

---

[5] As noted, the Plaintiff also failed to produce or identify the subject documents in response to a request for inspection under Rule 34. Under Rule 37(d), a district court may sanction a party who fails to serve a "written response" to a request for inspection submitted under Rule 34. Even if a response is filed, that is not always enough to insulate the Plaintiff from a Rule 37(d) sanction. *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1367 (11th Cir. 2008) ("under appropriate circumstances, evasive and incomplete answers to interrogatories are tantamount to no answers at all"); *In re Plywood Antitrust Litig.*, 655 F.2d 627, 638 (5th Cir. Unit A Sept.1981) (same). One appropriate sanction mentioned in Rule 37 is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). However, in this case the Defendants do not seek relief under Rule 37(d). Accordingly, the Court analyzes the motion only under Rule 37(c)(1).

[6] Both parties cite *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004), as purportedly setting out the standard applicable when ruling on a motion to strike. (*See* doc. 19 at 4; doc. 21 at 3). However, *Bearint* dealt with a district court's exclusion of a witness from testifying at trial when that witness was not listed on the pre-trial order. *See*, *Bearint*, 389 F.3d at 1353 ("We review a district court's exclusion of a witness not listed on the pretrial order for abuse of discretion, and consider: (1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify.").

the party was required to comply with the disclosure request." *See, e.g., Longhini v. W. 97 Corp.*, No. 1:15-CV-22874-UU, 2016 WL 3671870, at *4 (S.D. Fla. July 11, 2016)  (Ungaro, J.); *REX D. HILL, Plaintiff, v. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.*, No. 614CV950ORL41KRS, 2016 WL 7228748, at *4 (M.D. Fla. Jan. 20, 2016) (Mendoza, J.); *Graf v. Morgan*, No. CIV.A. 11-0064-CG-N, 2012 WL 869004, at *3 (S.D. Ala. Mar. 13, 2012) (Granade, J.); *Great N. Ins. Co. v. Ruiz*, No. CV 408-194, 2011 WL 321782, at *4 (S.D. Ga. Jan. 28, 2011) (Hall, J.); *Smith v. Jacobs Eng'g Grp.*, Inc., No. 4:06CV496-WS, 2008 WL 4194521, at *12 (N.D. Fla. Sept. 8, 2008) (Stafford, J.);  *Herndon v. Tippets*, No. CIV.A. 04-PWG-1026-E, 2005 WL 6736112, at *3 (N.D. Ala. Aug. 16, 2005) (Greene, M.J.);  *Bosch v. Title Max, Inc.*, No. CIV A 03-AR-0463-S, 2004 WL 5238128, at *4 (N.D. Ala. Aug. 25, 2004) (Acker, J.); *Chapple v. Alabama*, 174 F.R.D. 698, 701 (M.D.Ala.1997) (Carroll, M.J.). The Eleventh Circuit has articulated this same approach with regards to sanctions under <u>Rule 37(a) and (b)</u>. *See*, *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (*citing and quoting Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)) ("The Supreme Court has clarified that an individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested

action.'"). In light of the *Devaney* opinion, and the district court decisions which have already adopted this approach, the Court is persuaded to follow suit.

The Eleventh Circuit has also not explained what "harmless" means in the context of Rule 27(c)(1). Again, though, the recent trend among district courts in this circuit is to hold that failure to comply with the mandate of the rule is harmless "when there is no prejudice to the party entitled to the disclosure." *Coleman v. Home Depot U.S.A., Inc.*, No. 1:15-CV-21555-UU, 2016 WL 4543120, at *1 (S.D. Fla. Mar. 21, 2016) (Ungaro, J.); *see also*, *Lee-Bolton v. Koppers Inc.*, No. 1:10-CV-253-MCR-GRJ, 2015 WL 11110547, at *3 (N.D. Fla. July 28, 2015) (Jones, J.); *Witt v. Franklin Cty. Bd. of Educ.*, No. CV-11-S-1031-NW, 2013 WL 832152, at *1 (N.D. Ala. Feb. 28, 2013) (Smith, J.); *Ripps v. Powers*, No. CIV.A. 07-0832-CG-B, 2010 WL 3339514, at *1 (S.D. Ala. Aug. 24, 2010) (Granade, J.); *Ellison v. Windt*, No. 6:99-CV-1268-ORLKRS, 2001 WL 118617, at *2 (M.D. Fla. Jan. 24, 2001) (Spaulding, M.J.); *Chapple*, 174 F.R.D. at 701. The Court is persuaded that this approach is also proper. The Plaintiff fails to set out or argue any of the above standards, and therefore fails to satisfy his burden. For that reason alone, the motion to strike is due to be granted. Further, as shown below, the arguments which <u>are</u> made fail to show how his failure was substantially justified or harmless.

First, the Plaintiff makes no argument whatsoever as to exhibits N and R. The

motion to strike will be granted as to those two exhibits.  As to the remaining exhibits, he argues:

> Plaintiff's *Exhibits B* [sic] is an email sent from Cleo Thomas to Ken Smith on December 14, 2011, which was copied to Plaintiff Ben Little and to Defendants Robinson and Palmore. Plaintiff's *Exhibit F* is an email sent from Cleo Thomas to Don Hoyt on December 14, 2011 and was copied to the Plaintiff and to Defendants Palmore and Robinson. Plaintiff's *Exhibit K* is an email that was sent from Don Hoyt to Plaintiff and Defendants Palmore and Robinson on December 16, 2011. These exhibits were readily available to the Defendant, and the Plaintiff was substantially justified in producing them in response to Defendant's Motion for Summary Judgment.

(Doc. 21 at 2) (italics and underlining in original).  The Plaintiff cites no authority, and this Court has found none, for the proposition that a party is justified in failing to produce or identify a document in Rule 26(a) merely because that document was already in the possession of an opposing party.

Nor does the above argument demonstrate lack of prejudice.  In making this argument, the Plaintiff confuses the Defendants' knowledge that the documents exist with their knowledge that the documents may be used to support a claim of the Plaintiff.  The fact that the Defendants possessed the documents imputes knowledge of the former, but not necessarily the latter.  The purpose of requiring the Plaintiff to at least identify these documents as part of his  initial disclosures is to avoid surprise and minimize prejudice.  *Cash v. State Farm Fire & Cas. Co.*, 125 F. Supp. 2d 474,

477 (M.D. Ala. 2000) (*citing Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85

(5th Cir.1994); *Smith v. Massachusetts Institute of Technology*, 877 F.2d 1106, 1111

(1st Cir.1989)); *King v. City of Waycross, Georgia*, No. CV 5:14-CV-32, 2015 WL

5468646, at *3 (S.D. Ga. Sept. 17, 2015). The Plaintiff's failure to identify and

produce these documents, even if they were in the possession of the Defendants, runs

afoul of this purpose.   If they had been produced or identified, the Defendants would

have had the opportunity for further investigation, preparation, and discovery with

regards to the Plaintiff's anticipated use of these documents.  The Plaintiff has failed

to show how the failure to identify or produce these documents, even if they were in

the possession of the Defendants, did not <u>prejudice</u> them.[7]  The motion to strike will

be granted as to exhibits B, F, and K.

> The Plaintiff next argues:
>
> With respect to <u>*Exhibit J*</u> the Defendant claims that Ken Smith was never disclosed in Plaintiff's Responses to Defendants' Written Discovery. However, Plaintiff's response to Defendants' Exhibit 2. #16. Plaintiff identifies Ken Smith as having knowledge of assurances that Plaintiff's legal fees would be paid. Defendants knew that Ken Smith could have evidence that could be presented in this case.

(Doc. 21 at 2-3).  Actually, the Defendants argue that the Ken Smith <u>email</u> was not

produced or identified pursuant to Rule 26(a).   Whether or not Smith had

---

[7] Again, the burden is on the <u>Plaintiff</u> to demonstrate <u>a lack of prejudice</u>.

9

"knowledge" pertinent to the issues in this case is irrelevant.

Finally, the Plaintiff argues:

> The Defendants are not prejudiced by presenting these exhibits the failure of the Plaintiff to disclose these documents emails. The information contained in the emails was also discussed in the deposition. (D.16-1 Ex. 1Pg. 65-66).

(Doc. 21 at 3).  Again, whether or not the emails were "discussed," whatever that means in this context, has no bearing on whether they were identified as documents the Plaintiff would use to support his claim.  Further, this underdeveloped and vague argument does not meet the Plaintiff's burden to demonstrate that the Defendants were not prejudiced as a result of the Plaintiff's failure to produce or identify these documents.

The Plaintiff having failed to carry his burden to show that his failure to disclose the documents in question was substantially justified or harmless, the motion to strike will be **GRANTED**.  Plaintiff's Exhibits B, F, J, K, N, and R, and all references and argument pertaining thereto (*see* doc. 18 at 10, 13-14), will be **STRICKEN**.

## II.   FACTS

The following facts have been proffered by the Defendants and have been admitted by the Plaintiff:

10

1.     Ben Little ("Little") was elected to the City of Anniston City Council in August 2000 and served until approximately November 5, 2012. (Deposition of Ben Little. (D. 16-1/p. 10-11).

2.     On November 21, 2011, the Fraternal Order of Police and multiple individuals filed a state lawsuit in the Circuit Court of Calhoun County (CV-2011-000341) against Councilman Little and former Councilman John Spain ("Spain"), a Caucasian man, alleging abuse of process, defamation, intentional infliction of emotional distress, outrage, and negligence/recklessness and/or wantonness, and seeking a declaratory judgment and other injunctive relief (hereinafter, the "F.O.P. lawsuit")(D. 16-1/p. 67/Ex. 2).

3.     The plaintiffs in the F.O.P. lawsuit allege[d] that Little and Spain:

> …carried out a plan, scheme and intentional and continual pattern and practice of harassment, intimidation, bullying, defamation, negligence, recklessness, wantonness and malice toward and against the Plaintiffs, sometimes in violation of Alabama law and contrary to their oath of office, creating a hostile work environment for Plaintiffs, and placing Plaintiffs, and the community, in risk of extraordinary and unnecessary harm and danger. Defendants have deliberately and falsely painted Plaintiffs in a false light and made every attempt possible to turn the individuals whom the Plaintiffs have taken a vow to protect and serve against the Plaintiffs.  By falsely promoting distrust of Plaintiffs, with absolutely no basis, and attempting to turn the community against the Plaintiffs, Defendants actions have made the Plaintiffs already difficult and dangerous job even more difficult and dangerous, exposing Plaintiffs to extreme and unnecessary danger and causing undue burden and emotional distress to Plaintiffs.

(*Id.*)

4.      Little hired attorneys Raymond Johnson and Lawrence Cooper to represent him in the defense of the FOP lawsuit. (D. 16-1/pp. 27-28).

5.      At the December 13, 2011 City of Anniston Council meeting, Little made a motion to add to the agenda a motion concerning paying legal fees for him and John Spain in the FOP lawsuit. The motion carried.  (D.16-1/ Ex. 10).

6.      When that agenda item was reached, Cleo Thomas, City Attorney, stated that Little could neither make nor vote on this motion, and asked if there was a motion forthcoming. (*Id.*)

7.      No council member made a motion concerning the attorney's fees in the matter against Council Member Little and Council Member Spain[].[8]

8.      On December 21, 2011, the City's insurer, the Alabama Municipal Insurance Corporation ("AMIC") filed a complaint for Declaratory Judgment against Ben Little and John Spain in the Circuit Court of Calhoun County, Alabama (CV-2011-900549)("Declaratory Action"), seeking a determination that the alleged actions of the defendants were not covered by the City's insurance policy.  The City of Anniston was not named as a party in the Declaratory Action.[9]  (D.16-1/Ex. 5).

9.      At the December 27, 2011 City of Anniston Council meeting, Little made a motion to approve for the City to defend against the Declaratory Action. The motion was seconded by Mayor Robinson, and the vote failed with Council Member Little casting the only vote in favor. (D.16-1/p.58/ Ex. 11).

10.      Little failed to respond to the Declaratory Action, and, on July 3, 2012, the court entered a default judgment in favor of AMIC.

---

[8]  The original version of fact number 7 included the language "and the motion failed." This is the only part of the fact which the Plaintiff disputes.  (*See* doc. 18 at 6, ¶7 ("No motion was made so it could not fail.")).

[9]  Also sometimes referred to in this opinion as the AMIC lawsuit.

(D.16-1/Ex.7).

11.     On November 24, 2014, the court in the FOP lawsuit dismissed the claims against Defendant Little with prejudice, but held the case open to address the issue of Little's contention that the City of Anniston should be responsible for paying his legal expenses in that case, stating as follows:

> This case shall remain open for the issue of payment of legal fees of the Defendants.  For that reason, the city of Anniston is joined in this case under Rule 19, Alabama Rules of Civil Procedure.  It will be the responsibility of the Defendant, Benjamin Little, to insure service on the city of Anniston as well as his claim regarding the city's responsibility of paying his accrued legal expenses in this case.  Failure to timely accomplish this will result in waiver of that claim.

 (D. 16-2/p. 4).

12.     Little filed a "Notice of Claim" with the City Clerk on December 3, 2014,but never filed a legal pleading asserting a claim against the City in the FOP lawsuit for the payment of his attorney's fees requested in his Notice of Claim. (D.16-2; D.16-1/Ex. 3/¶ 4).[10]

13.     On May 5, 2015, the court in the FOP lawsuit filed an Order, in response to the City's Motion to Dismiss and Opposition to Motion for Default Judgment, stating that Defendants Little and Spain must file a separate action solely against the City of Anniston rather than through the FOP lawsuit. (D.16-1/Ex. 4).

16.     On May 5, 2015, Little filed the present lawsuit against the City

---

[10]  Although this fact is technically "disputed" by the Plaintiff, his "dispute" does not seem to disagree with the fact as stated.  (*See*, doc. 18 at 7, ¶12 ("In the hearing on November 24, 2014[,] the [C]ourt ordered the City of Anniston joined in the lawsuit and did not direct the Plaintiff to file an additional pleading against the City.")).

of Anniston, Gene Robinson, former Anniston Mayor, and Herbert Palmore, former member of Anniston City Council, in the Circuit Court of Calhoun County, Alabama. (D. 16-1/Ex. 1).

17.    On June 5, 2015, this case was removed to this Court, and Plaintiff's Motion for Remand was denied on July 13, 2015. (D.1; D.6).

18.    Mayor Robinson has not served as Mayor for the City of Anniston since November 2012. (D.16-3/p. 12).

19.    Council Member Palmore has not served as a City Council Member for the City since the end of 2012.  (D. 16-4/pp. 17, 18).

(Doc. 17 at 2-6).[11]

## III.  ANALYSIS

---

[11]  The Plaintiff proffered six facts, none of which included an evidentiary citation to the record.  (Doc. 18 at 8-9, ¶¶20-25).  This Court's Uniform Initial Order provides:

> The third section [of the non-movant's brief] may contain additional, allegedly disputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment. The third section of the opposing party's statement of facts, if any, shall be clearly designated as such. Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.

(Doc. 2 at 18) (italics in original).  The Uniform Initial Order also provides: "**The court reserves the right *sua sponte* to STRIKE any statements of fact or responsive statements that fail to comply with these requirements**."  (Doc. 2 at 19) (emphasis in original).  Because the Plaintiff has failed to include a citation to the record in support of any of his proffered facts, these facts are hereby **STRICKEN** and will not be considered by the Court.

Further, proffered fact number 21 references the December 16, 2011, Hoyt email which, as noted above, will be stricken.  For that reason as well, the fact will not be included.

A.    **Summary Judgment Is Appropriate as to the Claims Against Robinson and Palmore**

Because Robinson and Palmore are sued only in their official capacities, the section 1983 claims against them are essentially suits against the City of Anniston. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *see also, Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual.") (citation omitted); *Cook ex rel. Estate of Tessler v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (citation omitted); *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) ("We start with the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents.").  For that reason, summary judgment will be granted as to the section 1983 claims (Count One) against Robinson and Palmore.

The same theory applies as to the state law claim in Count Two. As Judge

Steele, in the Southern District of Alabama has noted:

> The Alabama Supreme Court has recognized that, just as claims against county commissioners in their official capacities constitute claims against the county, "claims that are brought against municipal employees in their official capacity are also, as a matter of law, claims against the municipality." *Morrow v. Caldwell*, 153 So.3d 764, 771 (Ala. 2014); *see also Alabama Mun. Ins. Corp. v. Allen*, 164 So.3d 568, 576 (Ala. 2014) (same); *Ex parte Labbe*, 156 So.3d 368, 374 (Ala. 2014) ("the claims asserted against Mayor Labbe in his official capacity are simply claims asserted against the City"); *Dickinson v. City of Huntsville*, 822 So.2d 411, 415 (Ala. 2001) (reasoning that a mayor is "in her official capacity, within the line and scope of her office, the agent of the City, through whom the City acts. Thus, to sue the mayor in her official capacity is simply another way of suing the City.") (emphasis added).

*Raby v. Reese*, No. CV 15-0159-WS-C, 2016 WL 1642677, at *9 (S.D. Ala. Apr. 25, 2016) (Steele, J.).  Accordingly, summary judgment will be granted as to the state law breach of implied contract claim (Count Two) against Robinson and Palmore..[12]

**B.   Summary Judgment Is Appropriate as to the Claims Against the City of Anniston**

**1.   *The Section 1983 Claim in Count One***

Count One alleges that Little's request that the City pay his attorney's fees was

---

[12] Because the individual defendants are sued only in their official capacities, there is no need to review their qualified immunity arguments.  (Doc. 17 at 16).  *See*, *Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016) ("The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities[.]").

denied, because he is an African American, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.  The claim is based on two separate requests to pay fees associated with two separate suits–the FOP lawsuit and the AMIC lawsuit.

> **a.      The Statute of Limitations as to These Claims Has Run**

The Eleventh Circuit has noted that "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (*citing Wilson v. Garcia*, 471 U.S. 261, 275–76, 105 S.Ct. 1938, 1946–47, 85 L.Ed.2d 254 (1985)).  Because this claim was brought in Alabama, the two-year statute limitations found in Ala. Code § 6-2-38 applies. *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989).  However,

> federal law determines the date on which the statute of limitations begins to run, and for a § 1983 action the statute begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir.2003). While a plaintiff must have "a complete and present cause of action" to bring suit, the "cause of action accrues even though the full extent of the injury is not then known or predictable" once the wrongful act occurs. *Wallace v. Kato*, 549 U.S. 384, 388, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).

*Allen v. Dekalb Cty. Jail's Med. Providers/Private Contractors,* 632 F. App'x 593,

594 (11th Cir. 2016).

Little makes no argument that the section 1983 claim, to the extent that it is based upon Little's request for payment of attorney's fees in connection with the AMIC lawsuit, is timely.[13]   Regardless, that claim accrued, and the statute of limitations began to run, on December 27, 2011, when Little made a motion before the council for those fees to be paid, and the motion failed.  At that point "the facts which would support a cause of action [were] apparent," or they should have been apparent "to a person with a reasonably prudent regard for his rights." *Brown*, 335 F.3d 1259, 1261 (11th Cir.2003).  Because this case was not filed until May 5, 2015, well more than two years after the statute of limitations began to run on that claim, it is untimely and due to be dismissed.

The statute of limitations for a section 1983 claim for fees related to the FOP litigation began to run on December 13, 2011.  That was the date that Little asked for the issue to be  added to the council's agenda, and it was, but ultimately no motion

---

[13]  It appears that the Plaintiff may have recognized the futility of doing so.  In his brief he seems to limit his section 1983 claim to only the FOP lawsuit, writing:

> The FOP Lawsuit was directed specifically at Little. The fact that Spain was named was secondary to the FOP's efforts to disgrace, humiliate and destroy Little's personal and political life. This §1983 claim is brought against the City for discriminating against Little by not acting to pay his attorney's fees in the lawsuit.

(Doc. 18 at 15).

was made as to that agenda item.  Little argues, without authority, that the fact that "no vote was ever taken" (doc. 18 at 15) means that the statute did not begin to run on that date.  This argument is without merit.  The fact that the matter was before the council and it refused to <u>approve</u> his request should have been enough for "a person with a reasonably prudent regard for his rights." *Brown*, 335 F.3d 1259, 1261 (11th Cir.2003).[14]  Likewise, just because the state court "held the case open to address the issue of Little's contention that the City of Anniston should be responsible for paying his legal expenses in that case" (doc. 18 at 15-16), does not mean that the city's earlier failure to approve fees should not have put him on notice that he had a claim. Little has offered no authority to the contrary, and the Court is aware of none.

More than two years having passed since the council meeting on December 13, 2011, the section 1983 claim, to the extent it is based on the request for payment of attorney's fees in connection with the FOP litigation, is untimely, and summary judgment is appropriate on that claim.

### b.   There Is No Evidence that the City Had a Policy or Custom of Race Discrimination

The Supreme Court has explained:

Title 42 U.S.C. § 1983 provides in relevant part:

---

[14]  There is no evidence that the issue was tabled for another meeting or otherwise continued.  Notably, Little never suggests when, if ever, the statute began, or will begin, to run.

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (*citing Monell*, 436 U.S., at 665–683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691, 98 S.Ct. 2018; *Canton*, 489 U.S., at 392, 109 S.Ct. 1197; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (collecting cases).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell,* 436 U.S., at 691, 98 S.Ct. 2018; see id., at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.; Pembaur, supra*, at 480–481, 106 S.Ct. 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur, supra*, at 479–480, 106 S.Ct. 1292.

*Connick v. Thompson*, 563 U.S. 51, 60–61, 131 S. Ct. 1350, 1358–59, 179 L. Ed. 2d 417 (2011).

The Plaintiff does not set out, or explain, what "official municipal policy" caused his injury in this case. While the Plaintiff's brief <u>does</u> briefly discuss "policies or procedures" with regard to "determining whether or not a city official should have his attorney fees paid" (doc. 18 at 12),[15] he does not do so in the context of showing

---

[15] The Plaintiff argues:

> In his deposition statement Councilman Herbert Palmore was asked if there were any policies or procedures that are followed in determining whether or not a city official should have his attorney fees paid if sued in his official capacity. Mr. Palmore stated that; "…you have to be in an official capacity, operating under your position as the authorities you have. If you are operating officially and on an honest capacity – you should be paid." He agreed there would be an expectation of those attorney fees being paid. (Exhibit E. Herbert Palmore Depo. pp 24-26)[.]

(Doc. 11-12).  The Plaintiff continues:

> However, when asked why the council would not consider paying Councilor Little's attorney fees, Mayor Gene Robinson stated; " Because I didn't believe that Spain or Reverend Little needed the money to go forward. That I took on all my lawsuits myself. I paid for all my lawsuits, and they shouldn't go and waste the city money like that. That's just the way I felt." (Exhibit F . Gene Robinson Depo. pp 31-32)[.]

> The law provided for the City to pay to defend a councilor sued in his official capacity, but the mayor felt it was a waste of money. However, we believe that it all depended on who the particular city council member was. When asked wasn't it the practice for the city to pay the legal fees for council members and elected officials and employees sued for performing the functions of their job, Mayor Robinson stated, "Not necessarily. <u>It all depends on the individual case</u>."(Exhibit G. Herbert Palmore Depo. pp 45-56)[.]

(Doc. 12 at 18) (emphasis in original).  Nothing about these paragraphs establishes a custom or practice of the City of discriminating against African American city councilmen in the failure to pay legal fees.  Notably, the City took the same position regarding the legal fees of Spain, who is Caucasian.

that the City had a custom or practice of discrimination.  He does not explain how those procedures led to the alleged discrimination in this case.

The Plaintiff also has not alleged <u>conduct</u> which establishes a practice of the City.  In his Complaint, he alleges that the City had paid the legal fees "for similarly situated white councilors." (Doc. 1-3 at 7).  However, the Plaintiff has identified only two lawsuits, one in 2006, and one in 2014, in which he alleges the City has paid the fees of Caucasian members of the City counsel.  Even if the Court were to consider such allegations evidence, and it does not, *see* Fed. R. Civ. P. 56(c)(1) (requiring parties to cite to <u>evidence</u> to support factual positions), two lawsuits over eight years does not establish a "practice" or "custom."[16]

### c.    There Is No Evidence of Disparate Treatment

With regards to claims for race discrimination, the Eleventh Circuit has stated:

> To state a § 1983 equal protection claim, [a] plaintiff . . . must show that she is similarly situated to non-[African Americans] who received more favorable treatment. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir.2006) ("To establish an equal protection claim, a [plaintiff] must demonstrate that (1) he is similarly situated to [others] who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."); *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir.2001) (stating that, to establish an equal protection violation, a plaintiff must show, among other things, that "he

---

[16]  In his deposition the Plaintiff merely stated that "a lot of lawsuits have been paid." (Doc. 16-1 at 19(71)).

is similarly situated" to others who received more favorable treatment).

*Douglas Energy Relief Ass'n v. City of Douglas, Ga.*, 556 F. App'x 820, 822 (11th Cir. 2014).  The Plaintiff fails to argue, or even cite, this standard.  Further, even if the Court were to consider the allegations in his Complaint to be evidence of disparate treatment, and it does not, the Plaintiff has presented no evidence that the Caucasian council-members whose fees were allegedly paid were similarly situated to the Plaintiff in all relevant respects.  *See, Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).  There is no discussion of evidence of the nature of those other suits compared to the FOP lawsuit and the AMIC lawsuit.

### 2.    *The Implied Contract Claim in Count Two*

In Count Two, the Plaintiff alleges that "[t]he Defendants have breached their established policy, as well as their implied contract, by failing to reimburse Little [for] the fees and expenses he incurred in defendant against the FOP lawsuit."  (Doc. 1-3 at 8).

The Alabama Supreme Court has stated:

"The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Hargrove v. Tree of Life Christian Day Care Ctr.*, 699 So.2d 1242, 1247 (Ala.1997).  Proof of an implied contract requires the same basic elements as an express contract. *Steiger v. Huntsville City Bd. of Educ.*, 653 So.2d 975, 978 (Ala.1995)(explaining that "[n]o contract is formed without an offer, an acceptance, consideration, and

mutual assent to terms essential to the contract" (*citing Strength v. Alabama Dep't of Fin.*, 622 So.2d 1283, 1289 (Ala.1993))).

*Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013). The Defendants argue that there is no evidence of any implied contract. In response, the Plaintiff fails to cite or argue these elements. Instead he writes:

> There was no valid reason given to support why the City has not voted to pay attorney's fees for Little in the FOP lawsuit. However, the City has in the past paid legal expenses for other city officials defending lawsuits against them in their official capacity. The City of Anniston paid attorney fees for Councilor Herbert Palmore when he was sued in a lawsuit with the Joint Power Authority ("JPA"). And, according to Councilor Palmore, legal fees were also paid by AMIC for Anniston City Council member Jeff Fink in 2006 sued in his official capacity. (*Exhibit O. Palmore Depo*. pp 18-22) I am certain their [sic] are others, however we have not been privy to those records. But as Mayor Robinson said, it depends on the individual situation. Councilor Palmore agreed in his deposition, "if a councilor is sued in his official capacity, operating under his authority, there would be an expectation those attorney's fees would be paid. (*Exhibit D. Herbert Palmore Deposition* pp. 24-26)[.]

(Doc. 18 at 16-17). The Plaintiff fails to provide any evidentiary support for any of the elements of a breach of implied contract claim. Summary judgment is therefore appropriate on that claim.

## IV.   CONCLUSION

Based on the foregoing, the Defendants' motion to strike and motion for summary judgment will be **GRANTED**, and this case will be **DISMISSED**.

**DONE** this 22nd day of December, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge